IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| REGINA NOE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 6:19-cv-03030-SRB |
| | ) |
| WILMA CHASTAIN and | ) |
| NEALE & NEWMAN, L.L.P., | ) |
| | ) |
| Defendants. | |

## ORDER

Before the Court is Defendant Neale and Newman, L.L.P.'s Motion to Dismiss Plaintiff's Amended Petition (Doc. #13). For reasons discussed below the motion is granted.[1]

**I.       Legal Standard**

Defendant NN Law filed the present motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. Under Rule 12(b)(6), a court may dismiss a claim for "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss [for failure to state a claim], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotation marks omitted) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Zink v. Lombardi*, 783 F.3d 1089, 1098 (8th Cir. 2015). "A claim has facial plausibility when the plaintiff pleads factual

---

[1] Plaintiff has not yet served Defendant Wilma Chastain with process. Accordingly, Plaintiff is ordered to file a statement showing cause why this Court should not dismiss her claims against Defendant Chastain without prejudice for failure to prosecute. *See Miller v. Benson*, 51 F.3d 166, 168 (8th Cir. 1995) (internal quotation marks omitted) (quoting *Sterling v. United States,* 985 F.2d 411, 412 (8th Cir.1993) (per curiam) and citing Fed. R. Civ. P. 41(b)) ("District courts have inherent power to dismiss sua sponte a case for failure to prosecute, and we review the exercise of this power for abuse of discretion."). Plaintiff shall file her statement on or before April 22, 2019.

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ash v. Anderson Merchs., LLC*, 799 F.3d 957, 960 (8th Cir. 2015) (internal citation quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 678).

The Court must accept all facts alleged in the complaint as true when deciding a motion to dismiss. *See Data Mfg., Inc. v. United Parcel Serv., Inc.*, 557 F.3d 849, 851 (8th Cir. 2009) (noting "[t]he factual allegations of a complaint are assumed true and construed in favor of the plaintiff, even if it strikes a savvy judge that actual proof of those facts is improbable"). However, allegations that are "legal conclusions or formulaic recitation of the elements of a cause of action . . . may properly be set aside." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (internal quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 677).

**II.     Background**

Plaintiff's amended complaint alleges the following facts, which the Court accepts as true for purposes of Defendant NN Law's motion to dismiss. *See Data Mfg., Inc.*, 557 F.3d at 851. In 2004, Plaintiff borrowed a total of $250,000 (the "2004 loan") from Defendant Wilma Chastain ("Chastain") to pay off another loan Plaintiff had taken out from a bank to purchase real property in Springfield, Missouri (the "real property"). (Doc. #10, pp. 2–3). Plaintiff had purchased this real property on behalf of Iron Horse Properties, Inc. ("Iron Horse"), "a Missouri corporation solely owned by [Plaintiff] and to help run a home for homeless veterans in honor of [Plaintiff's] father A.C. Smith, which was a personal charity owned and operated by [Plaintiff], not as a commercial operation." (Doc. #10, p. 3). On August 20, 2004, Plaintiff signed a promissory note personally and on behalf of Iron Horse, promising to pay Defendant Chastain the $250,000 plus interest within two years. (Doc. #10, p. 3; Doc. #10-1, p. 1). Plaintiff personally guaranteed the promissory note. (Doc. #10, p. 3). On April 15, 2009, Plaintiff

2

personally signed and guaranteed another promissory note on the same loan. (Doc. #10, p. 3). Plaintiff alleges that the 2004 loan "arises out of a personal charitable purpose" and that the "loan was primarily for personal, family or household purposes." (Doc. #10, pp. 11, 13).

The loan went unpaid. On February 25, 2010, Defendant Chastain filed suit against Plaintiff and Iron Horse to recover the $250,000 they owed her under the promissory notes. (Doc. #10, p. 3). On March 14, 2011, the Circuit Court of Greene County, Missouri, entered a $250,000 judgment (the "judgment") in favor of Defendant Chastain and against Plaintiff and Iron Horse. (Doc. #10, p. 3; Doc. #10-1, p. 2). On April 24, 2012, about a year after the judgment, Defendant Chastain formed an agreement (the "forbearance agreement") with Iron Horse to "renew the notes previously signed between the parties." (Doc. # 10, p. 4; Doc. #10-1, pp. 3–4). Under the forbearance agreement, Defendant Chastain promised to cancel the foreclosure sale of the real property in exchange for Iron Horse's promise to execute a new promissory note in the amount of $272,500 and a deed of trust conveying a security interest in the real property for the benefit of Defendant Chastain. (Doc. #10-1, p. 3). The forbearance agreement further provided that payment in full according to the new promissory note would satisfy Defendant Chastain's judgment. (Doc. #10-1, p. 3).

Iron Horse did not pay Defendant Chastain the full amount specified under the new promissory note that was part of the forbearance agreement. Beginning in July 2016, Defendant Neale and Newman, L.L.P, ("NN Law"), a law firm hired by Defendant Chastain, filed several garnishments in attempt to collect the amount Plaintiff allegedly still owed Defendant Chastain. (Doc. #10, pp. 5–9). Defendant NN Law directed the garnishments to Ken Davis, who is the trustee of the Revocable Trust of A.C. Smith and Olie Allene Smith (the "trust"). (Doc. #10, pp. 5–9; Doc. #10-1, pp. 15–20). Plaintiff has "rights in assets of the A.C. Smith Trust," to which

Plaintiff refers as "her father's Trust." (Doc. #10, p. 15). Plaintiff's rights in the trust assets "include cash and the rights to [Plaintiff's] portion of 5 acres of commercial property in Nixa, Missouri." (Doc. #10, p. 10).

Plaintiff brought this action, alleging that Defendants' collection activities are unlawful. In Count I of Plaintiff's amended complaint, Plaintiff alleges that Defendant NN Law violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, by filing the garnishments. (Doc. #10, pp. 11–12). In Count II, Plaintiff alleges that Defendants Chastain and NN Law violated the Missouri Merchandising Practices Act ("MMPA"), Mo. Rev. Stat. § 407.010 *et seq.*, through their collection efforts, including the garnishments. (Doc. #10, pp. 12–13). In Count III, Plaintiff alleges that Defendants Chastain and NN Law violated the garnishment procedures set forth in Missouri Supreme Court Rule 90 and Mo. Rev. Stat. § 525.010, *et seq.* (Doc. #10, pp. 14–15). Defendant NN Law now moves to dismiss Plaintiff's

### III. Discussion

#### A. Count I: Violation of FDCPA

The FDCPA allows "consumers who have been subjected to unfair practices by third-party debt collectors to recover damages, attorney fees, and costs." *Duffy v. Landberg*, 133 F.3d 1120, 1122 (8th Cir. 1998) (citing 15 U.S.C. § 1692k(a)). The FDCPA applies only to collection activity arising from a "debt," which the statute defines as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are *primarily for personal, family, or household purposes*, whether or not such obligation has been reduced to judgment." § 1692a(5) (emphasis added); *Duffy*, 133 F.3d at 1123 (citing § 1692a(5)) (holding that the FDCPA "broadly defines debt as 'any obligation' to pay arising out of a consumer transaction"). "The FDCPA

'characterizes debts in terms of end uses.'" *Micks v. Gurstel Law Firm, P.C.*, No. 17-CV-4659 (ECT/ECW), 2019 WL 418850, at *7 (D. Minn. Feb. 1, 2019) (quoting *Bloom v. I.C. Sys., Inc.*, 972 F.2d 1067, 1068 (9th Cir. 1992)). Under the FDCPA, "[t]he relevant time for determining the nature of the debt is when the debt first arises." *Zwicky v. Carlson & Assocs., Ltd.*, No. CIV. 11-1413 DSD/TNL, 2011 WL 6203058, at *1 (D. Minn. Dec. 13, 2011) (internal quotation marks omitted) (quoting *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 874 (7th Cir.2000)).

The parties dispute whether the 2004 loan Plaintiff borrowed from Defendant Chastain was "primarily for personal, family, or household purposes" and is thus a "debt" within the FDCPA's scope. Defendant NN Law argues that Plaintiff has failed to sufficiently plead that the 2004 loan is a "debt" within the meaning of the FDCPA because "[t]he purpose of the loan from Ms. Chastain to Ms. Noe was to fund a charity and purchase real property owned by a business, not for personal purposes, and thus the debt is not consumer debt subject to the FDCPA." (Doc. #14, p. 7). Plaintiff argues the loan in question is a debt she incurred "primarily for personal, family, or household purposes" under the FDCPA because "it is clear that Plaintiff Regina Noe personally guaranteed this debt and was personally liable for the judgment and that she used the debt for her personal purpose which included residing in the real property." (Doc. #15, p. 5). Defendant NN Law replies that Plaintiff's use of the word "personal" in her amended complaint "does not change the fact that the loan was used" to purchase the real property for a Missouri corporation; that Plaintiff's allegation that she personally guaranteed the 2004 loan "does not make the loan for 'personal, family, or household purposes'" within the meaning of the FDCPA; and that Plaintiff's allegation that she "lived in the house owned by the corporation in order to

run the charity does not turn the subject of the transaction into one of personal, family, or household purposes." (Doc. #18, p. 2).

Here, Plaintiff fails to state a claim under the FDCPA because the 2004 loan, as alleged by Plaintiff, is not a "debt" for FDCPA purposes. The obligation at issue arises from the $250,000 Defendant Chastain loaned to Plaintiff in 2004 to pay off another loan Plaintiff used to purchase the real property on behalf of Iron Horse—a for profit corporation—to serve homeless veterans.[2] A loan taken on behalf of a corporation to pay off another loan borrowed to pay for real property owned by that corporation is not incurred "primarily for personal, family, or household purposes." *See Isaacson v. Saba Commercial Servs. Corp.*, 636 F.Supp.2d 722, 725 (N.D. Ill. 2009) (FDCPA inapplicable where purported debt "originat[ed] from a business debt on behalf of a not for profit corporation...."). Plaintiff correctly points out that the plaintiff in *Isaacson* did not personally guarantee the not for profit's debt, whereas Plaintiff did personally guarantee the $250,000 loan she borrowed from Defendant Chastain to help pay the debt owed by Iron Horse. However, the FDCPA "characterizes debts in terms of end uses," not in terms of whether a business owner personally guarantees repayment of a loan regardless of its end use. *Micks*, 2019 WL 418850, at *7. The Court dismisses Count I without prejudice.

### B. Count II: Violation of MMPA

The MMPA creates a cause of action for "[a]ny person" who 1) purchases "merchandise" 2) "primarily for personal, family or household purposes" and 3) "suffers an ascertainable loss of money or property" 4) "as a result of the use or employment by another person of a method, act

---

[2] While Plaintiff does not directly allege that she lived in the real property, she does allege that "Defendant Wilma Chastain made the allegation [in a prior lawsuit] that Plaintiff Regina Noe and others were residing in" the real property. (Doc. #10, p. 5). Even if this allegation is true, it does not change the outcome here. The plain language of the FDCPA requires that the "debt" in question be incurred "*primarily* for personal, family, or household purposes." § 1692a(5) (emphasis added). Plaintiff does not, for example, allege that the main purpose of taking the loan was to provide herself with a residence. Her allegations do not "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Ash*, 799 F.3d at 960.

or practice declared unlawful by section 407.020." Mo. Rev. Stat. § 407.025.1; *Kuhns v. Scottrade, Inc.*, 868 F.3d 711, 719 (8th Cir. 2017) (citing Mo. Rev. Stat. § 407.025.1) (holding that the MMPA is a consumer protection statute that "provides a private right of action to any person who sustains ascertainable loss in connection with the purchase or lease of merchandise as a result of certain practices declared unlawful."). Defendant NN Law argues that Plaintiff has failed to sufficiently plead 1) that the 2004 loan was "for personal, family, or household purposes" within the meaning of the MMPA; 2) that Plaintiff has suffered any ascertainable loss as required under the MMPA; 3) that the garnishments at issue violate the MMPA; and 4) that the garnishments "have any 'connection with' the 2004 loan upon which the $250,000 Judgment was based." (Doc. #14, pp. 7–9). Plaintiff does not respond to Defendant NN Law's arguments for dismissing Count II. Plaintiff is silent as to Defendant NN Law's "ascertainable loss" or "in connection with" arguments. As to Defendant NN Law's "personal, family, or household purposes" argument, this Court presumes that Plaintiff intends for her arguments supporting her FDCPA claim to also support her MMPA claim.[3]

Here, Plaintiff has failed to state a claim under the MMPA. As stated above, Plaintiff alleges that she borrowed the 2004 loan on behalf of her business, Iron Horse, to help pay off another loan Iron Horse had borrowed to purchase real property for serving homeless veterans. These allegations do not show the purchase or lease of merchandise "primarily for personal, family or household purposes," as required under the MMPA. *See Shuler v. Trimble Navigation, Ltd.*, No. 08-0119-CV-W-GAF, 2008 WL 11337506, at *2 (W.D. Mo. May 6, 2008) (citing *Saey v. CompUSA, Inc.,* 174 F.R.D. 448, 450 (E.D. Mo. 1997)) (noting that merchandise purchased for a plaintiff's business does not give rise to an MMPA claim). The Missouri legislature's use

---

[3] This Court does not decide whether "primarily for personal, family, or household purposes" under the FDCPA has the same meaning as the MMPA's identical provision.

of "primarily" means that a business obligation does not fall within the MMPA just because it may have also incidentally served a personal purpose. *See Conway v. CitiMortgage*, 438 S.W.3d 410, 414 (Mo. banc 2014) (citing *Ports Petroleum Co., Inc. of Ohio v. Nixon*, 37 S.W.3d 237, 240 (Mo. banc 2001) ("When a statute does not include a definition for a term, courts consider its plain and ordinary meaning.")). Count II is dismissed without prejudice.

### C. Count III: Wrongful Garnishment

In Missouri, proceedings for garnishments in aid of execution are governed by Chapter 525 of the Missouri Revised Statutes and Missouri Supreme Court Rule 90. "In order to state a claim for wrongful garnishment, a plaintiff must allege" 1) "that the garnished property is his property" and 2) "abuse or misuse of the garnishment statute." *Howard v. Frost Nat'l Bank*, 458 S.W.3d 849, 854 (Mo. Ct. App. 2015) (collecting cases and holding that an action for wrongful garnishment is "cognizable" in Missouri). Defendant NN Law argues Plaintiff has failed to sufficiently plead both elements of a Missouri wrongful garnishment claim. As to the first element, Defendant NN Law argues that Plaintiff has failed to plead that any property belonging to Plaintiff has been garnished because she "has not alleged that there has been a payout from the Trust that she has not received or that there has been a judicial determination as to the allocations of the funds from the Trust." (Doc. #14, pp. 11–13). As to the second element, Defendant NN Law argues Plaintiff has failed to sufficiently plead "some kind of abuse or misuse of the garnishment statutes" because she has not properly alleged that the judgment had been satisfied before the garnishments were filed pursuant to a novation. (Doc. #14, pp. 11–13). Plaintiff does not respond to Defendant NN Law's arguments.

Plaintiff fails to state a wrongful garnishment claim because she does not sufficiently plead that any property was garnished. In the few Missouri cases where a plaintiff has prevailed

on a wrongful garnishment claim, some property belonging to the plaintiff was attached or seized as a result of garnishment filings. *See, e.g.*, *Moon v. Tower Grove Bank & Tr. Co.*, 691 S.W.2d 399, 400 (Mo. Ct. App. 1985) (judgment debtors had $1000 garnished from their bank accounts). Here, Plaintiff alleges that "Defendants['] unauthorized garnishment has resulted in Plaintiff being denied the possession and use of the property *to be given to her* in her father's Trust." (Doc. #10, p. 15) (emphasis added). Even if it is true that Plaintiff is a beneficiary of the trust, that she therefore has interests in the trust property, and that the trustee is the garnishee, Plaintiff has not alleged that any trust assets that were meant to be distributed to her have been attached or seized as a result of the garnishment filings. Plaintiff's allegations therefore do not "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Ash*, 799 F.3d at 960.

## IV. Conclusion

Accordingly, it is **ORDERED** that Defendant Neale & Newman, L.L.P.'s Motion to Dismiss Plaintiff's Amended Petition (Doc. #13) is granted. Plaintiff's claims against Defendant Neale & Newman, L.L.P. are dismissed without prejudice. It is further **ORDERED** that on or before April 22, 2019, Plaintiff shall file a statement showing cause why this Court should not dismiss her claims against Defendant Chastain without prejudice for failure to prosecute.

**IT IS SO ORDERED.**

/s/ Stephen R. Bough
STEPHEN R. BOUGH
UNITED STATES DISTRICT JUDGE

Dated: <u>April 10, 2019</u>